IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CLEMENT D. MAYNARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) Civ. No. 08-801-SLR | |
| | ) | |
| GOODWILL INDUSTRIES OF | ) | |
| DELAWARE AND DELAWARE | ) | |
| COUNTY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

———————————————————————————————

Clement D. Maynard, Wilmington, Delaware.  Pro se Plaintiff.

Timothy Andrew Dillon, Esquire, Salmon Ricchezza Singer & Turchi LLP, Wilmington, Delaware.  Counsel for Defendant.

———————————————————————————————

**MEMORANDUM OPINION**

Dated:  January  11 , 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On October 27, 2008, Clement D. Maynard ("plaintiff"), proceeding pro se, filed

suit against Goodwill Industries of Delaware and Delaware County, Inc. ("defendant")

alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964,

42 U.S.C. § 2000e-5.  (D.I. 2)  A subsequent letter to the court, filed November 24,

2008, further alleged breach of contract and violations of the Americans with Disabilities

Act ("ADA"), 42 U.S.C. § 12101, *et seq.*  (D.I. 5)  Presently before the court are the

parties' cross-motions for summary judgment and responses thereto.  (D.I. 34, 42)  The

court has jurisdiction pursuant to 28 U.S.C. § 1331.  For the reasons set forth below, the

court will grant defendant's motion for summary judgment and will deny plaintiff's motion

for summary judgment.  (D.I. 34, 42)

## II. BACKGROUND

Plaintiff has a bachelor's degree in education, a master's degree in

administration, and over thirty years of work-related experience.  (D.I. 2, ex. charge of

discrimination ("ex. COD"); D.I. 32, app. A)  Plaintiff suffered a stroke in 2000, and

receives Social Security disability.  (D.I. 2, ex.)  He was hired by defendant on

September 9, 2004, as an at-will employee in the full-time position of a workforce

development specialist ("WDS").  (D.I. 2, ex.  COD; D.I. 37, DA37; D.I. 40, DA105-117;

D.I. 41, DA118-28; D.I. 42, involuntary layoff questionnaire ¶ 1)  Plaintiff informed

defendant that he was disabled and the administrative staff, including Director Janice

Dewey ("Dewey") and Program Manager Cathy Kipp ("Kipp"), knew of his disability.

(D.I. 37, DA39; D.I. 42, ADA intake questionnaire ¶ 6)  Because of his disability status,

the Social Security Administration ("SSA") allowed plaintiff to work full-time for nine months in a "trial work experience" without losing his Social Security benefits.  (D.I. 2, ex. COD; D.I. 37, DA39)

Personnel records indicate that plaintiff's work hours were decreased on June 24, 2005 due to health reasons.  (D.I. 40, DA90)  On July 25, 2005, plaintiff submitted his resignation by email, stating, "effective August 31, 2005, I will be resigning from my position ."  (D.I. 36, DA11)  Because he received Social Security disability benefits, plaintiff was limited in the amount of income he could earn.  (D.I. 37, DA48)  Plaintiff testified that he submitted his resignation because he could no longer work full-time and receive Social Security benefits at the same time.  (D.I. 37, DA41-42, DA49)  Plaintiff was able to perform all of his job duties and functions and at no time asked for help or an accommodation to perform his job functions. (D.I. 37, DA41, DA49)

Tony Darden ("Darden") was hired to assume the full-time WDS position that plaintiff vacated.  (D.I. 2, ex. COD)  The other full-time WDS position was held by Marie Washington ("Washington").  (*Id.*)  In the meantime, Director Dewey, plaintiff's supervisor, offered him a part-time position as a WDS, the position was approved, and plaintiff rescinded his resignation on August 18, 2005.  (D.I. 2, ex. COD; D.I. 37, DA42; D.I. 38, DA57; D.I. 40, DA88)  Plaintiff understood that  Chief Missions Officer Colleen Morrone ("Morrone") approved the part-time position.[1]  (D.I. 37, DA43)  She welcomed plaintiff back on the same day he rescinded his resignation and he acquired part-time

---

[1]Chief Missions Officer Morrone was Director Dewey's superior.  (D.I. 37. DA43)

status sometime in mid-summer 2005. (D.I. 37, DA43; D.I. 40, DA89) As a result, three individuals – plaintiff, Washington, and Darden, filled two and one-half WDS positions.

When Dewey was terminated in December 2005 or January 2006, Kipp assumed some of her responsibilities, while Morrone oversaw the major functions of the Director's position. (D.I. 2, ex. COD) Plaintiff testified that he was treated fairly by Director Dewey but, following her departure, Kipp and Regina Jones ("Jones") who later became the Interim Director, made attempts to "document him out" of his part-time WDS position. (D.I. 38, DA56) He testified that Kipp and Jones "wanted [him] out." (D.I. 38, DA60)

In January 2006, plaintiff approached Morrone about the Director's position, and she informed him that the position was being adjusted and that she would get back to him. (*Id.*) Plaintiff approached Morrone two additional times about the position.[2] (*Id.*) On February 16, 2006, Jones, who served as a training specialist, was promoted to Interim Director of Career Services. (D.I. 2, COD; D.I. 36, DA15) The position is a full-time position. (D.I. 36, DA15) Plaintiff testified during his deposition that, at the time, he was aware Jones was placed in the Interim Director's position.[3] (D.I. 38, DA52)

Washington resigned from her WDS position in February 2006, leaving the WDS position short staffed (i.e., one and one-half filled positions versus two and one-half filled positions). (D.I.2, ex. COD) After Washington had submitted her resignation, Jones met with Darden, Washington, and plaintiff. (D.I. 38, DA58) Jones indicated that

---

[2]Plaintiff's last contact with Morrone regarding the Director's position occurred when he submitted his application letter and resume to her in March 2006. (D.I. 42)

[3]Plaintiff provides a different version from his sworn testimony in his motion for summary judgment wherein he states that it was not until June 2006 that he became aware that Jones was the Interim Director. (D.I. 42, ¶ III)

when the two full-time WDS positions were filled, plaintiff's part-time position would be eliminated. (D.I. 37, DA58-59; D.I. 38, DA58) According to Darden, it was agreed that plaintiff would remain employed to assist with job development until additional individuals were hired to fill the WDS positions. (D.I. 32, app. J1) According to Washington, because her departure left the department short-staffed, plaintiff could remain employed until the open positions were filled. (*Id.* at app. J2, ¶ 10)

Although he did not see a job posting, plaintiff surmised the Director's position was vacant and, on March 8, 2006, sent Morrone a cover letter and his resume for the position.[4] (D.I. 32, app. A; D.I. 38, DA53) Plaintiff did not know if interviews were conducted, if the job remained open, or if a decision had been made for Jones to occupy the Director's position. (D.I. 38, DA53-54)

Plaintiff's claim that attempts were made to "document him out" of his position appears to refer to actions taken by Kim. In March 2006, Kipp asked plaintiff why he was not performing a function he had volunteered for during the staff shortage, and plaintiff responded that he was performing the job at the negotiated level. (D.I. 2, ex. COD) An email authored by Kipp to Jones, dated March 13, 2006, asks for advice, a meeting, and Jones' immediate attention regarding a discussion that occurred between plaintiff and Kipp wherein plaintiff allegedly used vulgar language. (D.I. 42, ex. Kipp Mar. 13, 2006 email) Plaintiff was later called into the Interim Director's office, accused of cursing at Kipp in front of an individual, and told that he would be "written up." (D.I. 2,

_____

[4]Defendant has no record of plaintiff's submission of his resume for the Director's position, but assumes for purposes of this motion that it was submitted in March 2006. (D.I. 35, n.2) Plaintiff states that his stroke had no effect on his ability to perform the Director's job duties. (D.I. 42, ADA intake questionnaire ¶ 4)

4

ex. COD)  A written reprimand, dated March 15, 2006, regarding the use of profanity was placed in plaintiff's file.  (D.I. 36, DA12)  Plaintiff did not sign the reprimand and states that he did not receive a copy of it.  (D.I. 42, ¶ III)  Plaintiff also argues, without supporting evidence, that Kipp began to harass him via memoranda in October and November 2006.  (D.I. 42, ¶ III)

Plaintiff has given discrepant dates as to when he removed his name from consideration for the Director's position.  During his deposition, he testified that it was April 2006.  (D.I. 38, DA54)  In his answers to interrogatories, he states that he spoke to Jones sometime in June 2006 and asked her to tell Morrone to remove his name from consideration for the Director's position.  (D.I. 32, ¶ 17)  Plaintiff removed his name as an applicant "to test [defendant's] response" and stated that the disciplinary writeup he was to have received "disappeared."  (D.I. 2, ex. COD; D.I. 32, ¶ 17; D.I. 38, DA54)  Personnel records indicate that, effective June 4, 2006, Jones' title changed from Interim Director of Career Services to Director of Career Development.  (D.I. 36, DA14)  Plaintiff testified there was no announcement that Jones had become Director and he did not become aware of it until late October or November 2006.  (D.I. 38, DA54)

In September 2006, Jones informed plaintiff of the intent to eliminate his part-time position.  (D.I. 37, DA50)  At the time, Jones told plaintiff that he could have one, of two, full-time mid-manager jobs, but plaintiff rejected them because they did not pay enough for him to forego his Social Security disability benefits and it made no sense to

5

him to take on a full-time job with more responsibilities with the same rate of pay he received for his part-time position.[5] (D.I. 2, ex. COD; D.I. 23, ¶ 8; D.I. 37, DA50)

Darden, who held a WDS position, was terminated in October 2006 and replaced with a female.[6] (D.I. 2, ex. COD; D.I. 38, DA58) Accordingly, at that time two individuals, plaintiff and the newly hired female, filled one and one-half WDS positions. In December 2006, plaintiff was informed that, because a new WDS had been hired to replace Darden, plaintiff's part-time position was being eliminated.[7] (D.I. 2, ex. COD; D.I. 38, DA58) It was plaintiff's understanding that he would retain his part-time position until defendant had filled two full-time WDS positions. (D.I. 38, DA58) At the time, plaintiff was offered two other full-time positions at the same salary, but he rejected the offers. (D.I. 38, DA59)

Plaintiff believes his position was eliminated because his superiors were intimidated by his knowledge and qualifications. (D.I. 38, DA60) After Dewey left, plaintiff discovered that none of the management staff had degrees. (D.I. 38, DA64)

___

[5]Plaintiff also testified that he was offered full-time positions in either March or April 2006. (D.I. 37, DA49)

[6]Darden claims he was harassed by his immediate supervisor when she insisted he perform work for which he did not have adequate training or sufficient time to complete. (D.I. 32, app. J1, ¶ 5)

[7]Neither Kipp nor Jones could make employment decisions without the approval of Morrone. (D.I. 38, DA60) Plaintiff testified that he assumed Morrone discriminated against him based upon his disability because he submitted his paperwork, had the most experience and was qualified for the Director's position, but was not allowed to interview for the position. (D.I. 37, DA45) Plaintiff did not talk to anyone who told him that, due to his disability, Morrone did not want him to hold a management position. (*Id.*) Plaintiff assumes that Ted Van Name ("Name"), defendant's CEO, discriminated against him because Name's approval was required. (D.I. 37, DA46)

Plaintiff testified that the elimination of his part-time position had nothing to do with his disability or gender. (*Id.*) Despite this testimony, he also testified that he was discriminated against as a male because, within the organization and for the past seven or eight years, no men have held management positions in Career Services.[8] (D.I. 38, DA65) He does not know if, after males applied for management positions and were rejected, females were hired instead. (*Id.*) Regardless, he testified that men should have been hired for the Director's position and that men were available for that position citing as examples, himself, Darden, and a temporary male employee in Dover. (D.I. 38, DA60, DA65; D.I. 39, DA66) Plaintiff does not believe that he should have been promoted, so much as that he should have been given the courtesy of an interview. (D.I. 38, DA64) He explains that, had defendant interviewed him, he could not have been refused the opportunity to seek the Director's position because he was the most experienced and educated individual. (D.I. 38, DA64)

Plaintiff was separated from his job on December 14, 2006.[9] (D.I. 40, DA91) At the time, he was a part-time employee. (D.I. 37, DA34) Plaintiff has no evidence that another person was hired for the part-time position he vacated. (D.I. 37, DA50) Plaintiff testified that he did not resign from his part-time position even though he signed a

---

[8]The record indicates that Kipp and Jones, both female, were promoted although neither of them hold bachelor's degrees. (D.I. 42, involuntary layoff questionnaire, ¶ 19)

[9]Plaintiff understood that he had been laid off, but when he attempted to collect unemployment benefits, defendant took the position that it had offered, and plaintiff declined, two full-time mid-management level positions. (D.I. 2, ex. COD) On appeal, plaintiff was awarded benefits. (*Id.*) Because plaintiff receives Social Security disability benefits, when considering accepting employment, he considers whether the salary is sufficient for him to give up his disability benefits. (D.I. 37, DA48)

document that stated he resigned. (D.I. 37, DA49; D.I. 40, DA91)  Plaintiff testified that, contrary to what he had been told, his part-time position was eliminated after one full-time WDS position was filled rather than after two full-time WDS positions had been filled. (D.I. 38, DA59)

Plaintiff claims that defendant's Wilmington office "is now made up of inexperienced and less experienced females only." (D.I. 2, ex. COD)  He asserts that defendant prevented him from applying for the Director's position and breached its agreement to retain him in a part-time capacity until the two full-time WDS positions had been filled. (D.I. 2, ex. COD; D.I. 5)  He alleges improper discharge as well as sex and disability discrimination. (*Id.*; D.I. 5)  The complaint alleges termination of employment and failure to promote by reason of sex discrimination. (D.I. 2, ¶ 11)

Plaintiff filed charges with the Equal Employment Opportunity Commission ("EEOC") on July 6, 2007. (D.I. 2, ¶ 8)  His charge of discrimination dated December 19, 2007, refers to age and disability discrimination. (D.I. 2, ex. COD)  A letter from the EEOC dated February 5, 2008, refers to violations of Title VII of the Civil Rights Act of 1964 and the ADA, but makes no reference to age discrimination.[10] (D.I. 42, Feb. 6, 2008 EEOC letter).  The EEOC issued a right-to-sue letter on August 23, 2008. (D.I. 2)

---

[10]Plaintiff's motion for summary judgment contains a statement that his EEOC charge claimed discrimination for failure to promote, as well as discrimination based upon disability, age, and sex. (D.I. 42, ¶ I)  His motion contains no argument regarding age discrimination. Additionally, it does not appear that the EEOC considered one of his claims as an age discrimination claim. Also, plaintiff's complaint does not raise a claim of age discrimination. Accordingly, the court considers the age discrimination claim waived.

## III. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986). The facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences from the evidence must be drawn in that parties' favor. Conopco, Inc. v. United States, 572 F.3d 162, 165 (3d Cir. 2009). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255). The rules are no different when there are cross-motions for summary judgment. Lawrence v. City of Philadelphia, 527 F.3d 299, 310 (3d Cir. 2008).

Defendant moves for summary judgment on the grounds that plaintiff's failure to promote claim is time-barred; he cannot establish a prima facie case of gender or disability discrimination; he cannot rebut defendant's legitimate non-discriminatory business decisions; he offers no evidence that defendant's actions were pretextual or discriminatory; and he is not entitled to an award of back-bay because he rejected other

9

comparable positions after the elimination of the WDS position. (D.I. 34, 35) Plaintiff moves for summary judgment on the grounds that defendant engaged in a deliberate scheme to deny him the opportunity to apply for a leadership position that ultimately led to the termination of his employment. (D.I. 42)

## IV. DISCUSSION

### A. Filing of EEOC Charge

Defendant moves for summary judgment on the failure to promote claim on the grounds that it is time-barred. Defendant asserts that the claim accrued either in April 2006 (when plaintiff removed his name from consideration for the Director's position under the belief that he would not be properly considered for the job) or on June 4, 2006 (when Jones was appointed permanent Director). Plaintiff responds that he did not become aware that Jones was officially selected for the Director's position until November 9, 2006 and, therefore, he timely filed his EEOC charge. He also takes the position that defendant's acts are continuing violations and, as a result, the tolling period began on December 14, 2006, the day he was wrongfully discharged.

A Title VII plaintiff in a "deferral state" such as Delaware must file a charge of discrimination with the EEOC within three hundred days of the alleged unlawful conduct. *See* 42 U.S.C. § 2000e-5(e); *Watson v. Eastman Kodak Co.*, 235 F.3d 851, 854 (3d Cir. 2000); *Ohemeng v. Delaware State Coll.*, 643 F. Supp. 1575, 1580 (D. Del.1986); *see also Lacy v. National Railroad Passenger Corp.*, 254 F. App'x 934 (3d Cir. 2007) (not published). "[A] claim accrues in a federal cause of action upon awareness of actual injury, not upon awareness that this injury constitutes a legal wrong." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1386 (3d Cir. 1994).

10

Under the continuing violation doctrine, if a plaintiff has filed a charge of discrimination "that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Mikula v. Allegheny County Of PA,* 583 F.3d 181,186 n.3 (3d Cir. 2009) (citations omitted). As determined by *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the doctrine does not apply to discrete employment actions. *Id.* "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" *Morgan*, 536 U.S. at 114.

In the present case, plaintiff alleges two discrete employment acts: a failure to promote and elimination of his part-time position. *See O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006) ("Morgan established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated to make out a hostile work environment claim. The former must be raised within the applicable limitation period. . . .") "[D]iscrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Mikula v. Allegheny County Of PA,* 583 F.3d at 185-86 (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. at 133).

11

Plaintiff filed his EEOC charge on July 6, 2007.[11] Plaintiff's EEOC charge does not provide the date when he applied for the Director's position or the date he removed his name from consideration. Defendant argues that April 2006, when plaintiff removed his name from consideration for the Director's position, is the date plaintiff knew that he was not being treated fairly and, therefore, the date that the failure to promote claim accrued. Defendant also posits that the claim accrued as of June 4, 2006, the date that Jones became the permanent Director or in June 2006 when plaintiff testified he became aware that Jones became the Interim Director. Under all of defendant's scenarios, the failure to promote claim is time-barred.

Plaintiff argues that the position that his failure to promote claim accrued in November 2006. He testified there was no announcement that Jones had become Director and he did not become aware of it until late October or November 2006 when her name appeared on a memo. Under plaintiff's date, the failure to promote claim was timely filed.

When viewing the entire record, it is evident that the failure to promote claim accrued as of April 2006, when plaintiff withdrew his application for the Director's position and, therefore, was no longer available for consideration for the Director position. Plaintiff's testimony indicates that he did not believe he was being treated fairly as of March 2006 and that he removed his name from consideration for the Director's position "to test" defendant. It is evident from plaintiff's testimony that, by sometime in March, plaintiff believed defendant's promotion practices were

---

[11]Plaintiff's part-time position was eliminated on December 14, 2006. Hence, it is clear that his EEOC charge was timely filed as to that claim.

discriminatory. Accordingly, the failure to promote claim is time-barred and the court will grant defendant's motion for summary judgment as to this issue.

## B. Gender Discrimination

Defendant moves for summary judgment on the grounds that plaintiff cannot establish a prima facie case of gender discrimination and did not offer sufficient evidence for a reasonable factfinder to conclude that defendant's reasons for failing to promote plaintiff and eliminating his position were pretextual. (D.I. 34, 35) Plaintiff moves for summary judgment on the grounds that defendant engaged in a scheme to deny him an opportunity to apply for the Director's position which led to his termination. (D.I. 42)

Plaintiff argues that defendant took its alleged actions because he is male, in violation of 42 U.S.C. § 2000e-2. A Title VII claim can be proven through one of two ways: (1) direct evidence of discrimination under a "mixed motive" theory of liability, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989); or (2) circumstantial evidence of discrimination under a burden shifting theory of liability. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff does not indicate under which theory he proceeds. Given the fact that defendant proceeded under the burden shifting theory of liability in its motion for summary judgment and plaintiff did not object or implement the mixed motive theory when filing his own motion for summary judgment, the court proceeds under the *McDonnell Douglas* burden shifting theory of liability.

The Third Circuit has referred to sex discrimination against males as "reverse discrimination." *Iadimarco v. Runyon*, 190 F.3d 151, 155 (3d Cir. 1999). It defined a modified burden-shifting analysis that differs slightly from the usual burden shifting test

13

as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[12] *See Iadimarco, supra.* As stated by the Third Circuit, "all that should be required to establish a prima facie case in the context of 'reverse discrimination' is for the plaintiff to present sufficient evidence to allow a fact finder to conclude that the employer is treating some people less favorably than others based upon a trait that is protected under Title VII. The factual inquiry in a Title VII case is whether the defendant intentionally discriminated against the plaintiff." *Iadimarco,* 190 F.3d at 161. "[A] plaintiff who brings a 'reverse discrimination' suit under Title VII should be able to establish a prima facie case in the absence of direct evidence of discrimination by presenting sufficient evidence to allow a reasonable fact finder to conclude (given the totality of the circumstances) that the defendant treated plaintiff "less favorably than others because of [his] race, color, religion, sex, or national origin." *Id.* at 163 (citation omitted).

Once plaintiff establishes a prima facie case that the act was discriminatory, the burden of production then shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. When the employer meets its relatively light burden, the burden of production returns to plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. *See id.* at 804-05. Accordingly, once an employer has proffered a legitimate, nondiscriminatory reason, the plaintiff "generally

---

[12]When the *McDonnell Douglas* framework is used, "the plaintiff must first establish a prima facie case of discrimination by showing that: (1) s/he is a member of a protected class; (2) s/he was qualified for the position s/he sought to attain or retain; (3) s/he suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." *McDonnell Douglas*, 411 U.S. at 802.

14

must submit evidence which: (1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or (2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir.1994). The ultimate issue is whether "discriminatory animus" motivated the employer. Hence, it is not enough to show that the employer made a wrong or mistaken decision. *Coulton v. University of Pa.*, 237 F. App'x 741, 747 (3d Cir. 2007) (not published). Instead, plaintiff must uncover "weaknesses, implausibilities, inconsistencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. *Id.* (citations omitted).

### 1. Failure to promote

Even were the court to assume that the failure to promote claim was timely filed, as discussed below, plaintiff is not entitled to recovery from defendant on this claim. Defendant argues that plaintiff has failed to establish a prima facie case of discrimination as he presented no evidence that other employees were similarly situated in all relevant aspects. Defendant notes that plaintiff was the only part-time WDS employee and contends that plaintiff did not offer evidence there were other part-time WDS employees or other Goodwill employees who were treated more favorably. Plaintiff contends that given his education and experience, at a minimum, he should have been interviewed for the Director's position. Plaintiff was aware that the Director's position had been vacated, that Jones, a female, had been named Interim Director and, although he did not see a formal job posting, applied for the Director's position.

15

Plaintiff's "evidentiary burden at [the prima facie] stage is rather modest: it is to demonstrate to the court that plaintiff's factual scenario is compatible with discriminatory intent - i.e., that discrimination could be a reason for the employer's action." *Marzano v. Computer Science Corp.*, 91 F.3d 497, 508 (3d Cir. 1996). This initial burden is not intended to be onerous. *Id.* In light of the foregoing and the reverse discrimination standard, the court concludes that plaintiff has established a prima facie case of gender discrimination.[13]

Nevertheless, the failure to promote claim cannot go forward. Defendant has provided legitimate non-discriminatory reasons for its failure to promote defendant. *See e.g., Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997)(noting that the defendant's burden at this stage is relatively light and that it is satisfied if the defendant articulates a legitimate reason for the adverse employment action). The record reflects

---

[13]The court notes that the person promoted to the Director's position is a female. While plaintiff is not required to show that he was replaced by someone outside of the protected class to establish an inference of discrimination, *see Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 347 (3d Cir.1999), the court finds the foregoing evidence sufficient to establish a prima facie case. *See Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007) (not published) (citing *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006)(stating that a plaintiff establishes the fourth element of a prima facie case if he was replaced by someone outside the protected class or was treated differently than similarly-situated, non-protected employees); *Maynard v. Board of Regents of Div. of Univs. of Fl. Dep't of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003)(same); *Zimmermann v. Associates First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001)(stating that "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis"). Moreover, the record indicates that plaintiff's education and experience exceeded other administrators in defendant's employ, including the female who was promoted to the Director's position. Finally, the record reflects that plaintiff was interested in a full-time position if the salary was sufficient to allow him to forego his Social Security disability benefits and that administrative personnel were aware of plaintiff's interest in the position.

16

that plaintiff repeatedly rejected full-time positions offered to him on account of his

Social Security disability benefits.  Personnel records indicate that the Director's position

is a full-time position.  Because the record reflects a legitimate non-discriminatory

reason for the failure to promote, plaintiff must show that this reason was pretextual.

Plaintiff, however, failed to establish a genuine issue of material fact that

defendant's legitimate non-discriminatory reason for the failure to promote was

pretextual.  There is nothing in the record to suggest that the position was officially

posted or open for competitive evaluation.  Most significantly, after plaintiff applied for

the position, he withdrew it "to test" defendant's response and upon the belief that a

disciplinary writeup would be withdrawn.  Defendant cannot be faulted for failing to

interview or promote plaintiff for a position once he withdrew his name from

consideration.

The foregoing facts would not permit a trier of fact reasonably to disbelieve

defendant's reason for failing to promote plaintiff or conclude that some other invidious,

discriminatory reason was more likely than not a motivating or determinative cause of

defendant's action.  Therefore, the court finds that plaintiff's evidence on the issue of

failure to promote is legally insufficient to support a finding of discrimination.  For the

above reasons, the court will grant defendant's motion for summary judgment with

regard to gender discrimination and failure to promote, and will deny plaintiff's motion

for summary judgment on the same issue.

### 2. Elimination of part-time position

Defendant moves for summary judgment on the elimination of the part-time

position on the grounds that plaintiff cannot establish a prima facie case of

17

discrimination, cannot rebut defendant's legitimate non-discriminatory business decision, and offers no evidence that defendant's actions were pretextual or discriminatory. Plaintiff did not respond to this issue as raised by defendant.

For the purposes of this motion, defendant assumes that plaintiff could establish he was qualified for his position as a WDS, and that the elimination of his part-time position was an adverse employment action. (D.I. 35, n.4) As discussed above, with regard to the failure to promote claim, the court determined that plaintiff made a prima facie case of gender discrimination. He has not, however, established a prima facie case of gender discrimination for the elimination of the part-time position. The court was not provided with evidence regarding other part-time employees of defendant. The record does reflect that, when defendant eliminated plaintiff's part-time position, it did not fill the position. Notably, plaintiff testified that he did not believe his part-time position was eliminated because of gender or disability. His complaint was that defendant eliminated the position sooner that he expected. Plaintiff also believed that the position was terminated because his superiors were intimidated by his qualifications. For the above reasons, the court will grant defendant's motion for summary judgment on this issue.

## C. Disability Discrimination

Defendant moves for summary judgment on grounds that plaintiff cannot establish a prima facie case of disability discrimination. For the purposes of this motion only, defendant accepts that plaintiff was disabled within the meaning of the ADA and admits that plaintiff was qualified to perform the essential functions of the WDS position. Defendant argues that plaintiff can point to no evidence that he was not promoted or

that he was terminated because of his disability. Plaintiff did not respond to this portion
of defendant's motion.

The ADA provides that "[n]o covered entity shall discriminate against a qualified
individual on the basis of disability in regard to . . . [the] discharge of employees . . . and
other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To
establish a prima facie case under the ADA, a plaintiff must show that he: (1) has a
disability; (2) is a qualified individual; and (3) has suffered an adverse employment
action because of that disability. *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611
(3d Cir. 2006). Once a plaintiff establishes a prima facie case, the burden shifts to the
employer to articulate a legitimate, non-discriminatory reason for the adverse
employment action. *See McDonnell Douglas*, 411 U.S. at 802-05. The plaintiff then
bears the burden of establishing that this proffered reason is a pretext for discrimination.

Plaintiff failed to produce any evidence indicating that defendant's employment
decisions were made as a result of discrimination based on his perceived disability.
With regard to the failure to promote issue, plaintiff testified that he "assumed" Morrone
discriminated against him on the basis of his disability because he was the most
experienced person and "it had to be something else." This is pure conjecture and is
wholly insufficient to support a claim of discrimination. *See Atkinson v. LaFayette Coll.*,
460 F.3d 447, 455 (3d Cir. 2006). Indeed, summary judgment must be granted where a
nonmovant's evidence is merely speculative. *Anderson v. Liberty Lobby*, 477 U.S. 242,
249-50 (1986).

The *McDonnell Douglas* burden-shifting framework, as described above, applies
to ADA claims. *See Shaner v. Synthes*, 204 F.3d 494, 500-01 (3d Cir. 2000). Even

19

assuming that plaintiff established a prima facie case under the ADA with regard to the failure to promote claim, summary judgment for defendant is appropriate for the same reasons discussed in the failure to promote gender discrimination section of this memorandum.

With regard to the elimination of the part-time position, plaintiff specifically testified that he did not believe the position was eliminated as a result of his disability. Also, as discussed above, his main complaint is that the position was eliminated earlier than he expected. There are no established facts that could possibly raise an inference of a causal link between plaintiff's disability, or defendant's perception of it, and the adverse employment decisions.

For the above reasons, the court will grant defendant's motion for summary judgment on the disability discrimination issue.

## D. Supplemental Claims

Neither party address plaintiff's breach of contract claim. The face of the complaint indicates that both parties are citizens of the same states and, therefore, are not diverse. See 28 U.S.C. § 1332. Because the court will grant summary judgment to defendant on the federal claims, it declines to exercise jurisdiction over plaintiff's supplemental state law claim. 28 U.S.C. § 1367; De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003).

## V. CONCLUSION

For the above reasons, the court will grant defendant's motion for summary

20

judgment and will deny plaintiff's motion for summary judgment.[14]

An appropriate order will issue.

---

[14]The court sees no need to address the issue of back pay.